## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JACQUELINE WHITFIELD** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 24-806** |
| **PERE ANTOINE, LLC** | **SECTION: "G"** |

### AMENDED ORDER AND REASONS[1]

This litigation involves an employment discrimination dispute.[2] Before the Court are Defendant Pere Antoine, LLC's ("Defendant") Motion for Summary Judgment[3] and Plaintiff Jacqueline Whitfield's ("Plaintiff") Motion for Sanctions.[4] Defendant moves for summary judgment on all claims raised by Plaintiff herein, arguing that (1) Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and for denial of advancement are time barred; (2) Plaintiff's claims under Title VII should fail because Plaintiff did not exhaust her administrative remedies; and (3) Plaintiff cannot produce competent summary judgment evidence to substantially support the claims raised in the Complaint.[5] Plaintiff also seeks sanctions for alleged spoilation of evidence.[6] For the reasons stated herein, the Court finds that Plaintiff's claims under Title VII and the ADA are untimely and must be dismissed. The Court further finds that Plaintiff has failed to establish a *prima facie* case under the Equal Pay Act.

---

[1] The Court amends the July 21, 2025 Order to include Plaintiff's Motion for Sanctions.

[2] See Rec. Doc. 1.

[3] Rec. Doc. 66.

[4] Rec. Doc. 67.

[5] *Id.*

[6] Rec. Doc. 66.

Therefore, considering the motions, the oppositions, the reply memoranda, the record, and the applicable law, the Court grants the motion for summary judgment and denies the motion for sanctions.

## I. Background

Defendant operates a restaurant located at 741 Royal Street, New Orleans, Louisiana 70116.[7] In December 2021, Plaintiff applied for employment with Defendant as a server.[8] The complaint states that in Plaintiff's cover letter she indicated that she was only available for night shifts due to a medical diagnosis.[9] Plaintiff states that she was diagnosed with Delayed Sleep Phase Disorder.[10] Plaintiff was hired and began working for Defendant on December 15, 2021.[11]

The complaint states that shortly after Plaintiff commenced her employment with Defendant, a new night manager was hired, Michael Hughes ("Hughes").[12] In January 2022, Plaintiff alleges that she witnessed Hughes discriminate against a transgender co-employee, which Plaintiff reported to another manager.[13] Plaintiff alleges that she began suffering a hostile work environment in retaliation for reporting Hughes.[14] Plaintiff alleges that she began averaging only one table at a time, while other co-employees were allowed to work multiple tables at a time.[15]

---

[7] Rec. Doc. 1 at 3.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 4.

[11] *Id.* at 3.

[12] *Id.*

[13] *Id.* at 4.

[14] *Id.*

[15] *Id.*

On or about February 4, 2022, Plaintiff alleges that Hughes asked her if he could stay at her apartment for two weeks during Mardi Gras, which Plaintiff refused.[16] Thereafter, Plaintiff states that Hughes referred to her as "difficult" to another manager.[17]

On February 11, 2022, Plaintiff alleges that she injured her ankle by accidently stepping into a hole in the kitchen floor.[18] Plaintiff states that she reported this incident to Hughes.[19] Plaintiff contends that Hughes falsely stated that the injury occurred at home and refused to file an accident report.[20]

After returning to work on March 15, 2022, Plaintiff alleges that she was scheduled for daytime shifts, despite her medical condition, and she was assigned tables furthest away from the kitchen, despite the injury to her ankle.[21]

On March 20, 2022, Plaintiff states that she received a call from April Hartman, the Human Resource Manager, to discuss a negative online review regarding Hughes.[22] Thereafter, Plaintiff alleges that Hughes accused Plaintiff of actions and arguments that never occurred.[23]

---

[16] *Id.*

[17] *Id.*

[18] *Id.* at 5.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 6.

[22] *Id.*

[23] *Id.* at 7.

On or about March 30, 2022, Plaintiff was terminated based upon accusations of racial harassment towards an African American co-employee, Lena Perry ("Perry"), which Plaintiff denies.[24]

On or about December 28, 2022, Plaintiff submitted a charge against Defendant with the EEOC alleging discrimination.[25] On December 7, 2023, the EEOC issued a Notice of Right to Sue.[26]

On March 29, 2024, Plaintiff filed a complaint against Defendant in this Court.[27] Plaintiff, a Caucasian woman, brings causes of action for: (1) Hostile Work Environment pursuant to Title VII of the Civil Rights Act ("Title VII"); (2) reverse racial discrimination pursuant to Title VII; (3) disability discrimination pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. § 120101, *et seq.*) ("ADA"); (4) discrimination in pay pursuant to the Equal Pay Act (29 U.S.C. § 2016(d), *et seq.*); and (5) retaliation pursuant to Title VII.[28]

On May 30, 2024, Defendant filed a motion for partial summary judgment, arguing that Plaintiff's Title VIII and ADA claims were not timely filed.[29] The Court denied the motion as premature and afforded Plaintiff additional time to conduct discovery into alleged technical difficulties with accessing the EEOC portal.[30]

---

[24] *Id.* at 8.

[25] *Id.* at 26–27.

[26] Rec. Doc. 1-3.

[27] Rec. Doc. 1.

[28] *Id.* at 10–11.

[29] Rec. Doc. 6.

[30] Rec. Doc. 17.

On June 24, 2025, Defendant filed the instant Motion for Summary Judgment.[31] On July 1, 2025, Plaintiff filed an opposition to the motion.[32] On July 3, 2025, Defendant filed a reply memorandum in further support of the motion.[33]

On June 24, 2025, Plaintiff filed the instant Motion for Sanctions.[34] On July 1, 2025, Defendant filed an opposition to the motion.[35] On July 7, 2025, Plaintiff filed a reply memorandum in further support of the motion.[36]

## II. Parties' Arguments

### A.    Defendant's Arguments in Support of the Motion for Summary Judgment

Defendant moves for summary judgment, first arguing that Plaintiff's Title VII and ADA claims in Counts 1, 2, 3, and 5 are untimely because Plaintiff failed to file suit within 90 days of receipt of the EEOC's Notice of the Right to Sue.[37] Defendants explain that on December 28, 2022, Plaintiff filed a charge with the EEOC alleging discrimination on the basis of race, color, age, and disability, and retaliation.[38] On December 7, 2023, Defendant contends Plaintiff's attorney requested a Notice of the Right to Sue via email to the EEOC investigator, and on the same day, all parties and their counsel received an email notification indicating that a document was uploaded to the portal.[39] Defendant states the EEOC issued a Notice of the Right to Sue which

---

[31] Rec. Doc. 66.

[32] Rec. Doc. 71.

[33] Rec. Doc. 79.

[34] Rec. Doc. 67.

[35] Rec. Doc. 71.

[36] Rec. Doc. 81.

[37] Rec. Doc. 66-1 at 5.

[38] *Id.* at 6.

[39] *Id.*

instructed Plaintiff that she had 90 days to file suit, which expired on March 6, 2024.[40] According to Defendant, Plaintiff admitted she received the December 7, 2023 email, but Plaintiff and her attorney allege they had difficulty accessing the portal.[41] Defendant contends neither Plaintiff nor her attorney attempted to access the portal or contact the EEOC between December 9, 2023 and March 27, 2024.[42] Defendant avers Plaintiff filed suit on March 29, 2024, 113 days after receiving the Notice of the Right to Sue, which was issued upon Plaintiff's request.[43]

While the Court denied Defendant's prior Motion for Partial Summary Judgment as premature based on Plaintiff's claims that she needed additional discovery to evidence that she could not access the portal to view the Notice of the Right to Sue, Defendant contends that Plaintiff has conducted no discovery with the EEOC to support this contention.[44] Defendant provides that Plaintiff and her attorney admitted under oath that they did not exercise due diligence for more than three months to determine the contents of the December 7, 2023 email from the EEOC.[45] Defendant asserts, as a matter of law, the receipt of the notification email constituted the date upon which Plaintiff received Notice of the Right to Sue.[46] Defendant asserts Plaintiff's Title VII and ADA claims must be dismissed as untimely.[47]

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at 7.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

Second, Defendant argues Plaintiff's claim for "denial for advancements" in Count 1 is time-barred under Section 1981.[48] Defendant explains that claims for denial for advancement are subject to a one-year statute of limitations because it is considered a discrete act.[49] Defendant contends Plaintiff was terminated on March 30, 2022, and Plaintiff filed suit on March 29, 2024, which is untimely.[50] Defendant asserts this claim must be dismissed with prejudice.[51]

Third, Defendant argues Plaintiff failed to exhaust her administrative remedies with respect to her Title VII claims for sex discrimination, harassment, and retaliation in Counts 1 and 5.[52] Defendant states federal courts lack jurisdiction to consider Title VII claims unless there is administrative exhaustion.[53] Defendant explains that Plaintiff checked the boxes for discrimination based on race, color, retaliation, age, and disability on her EEOC complaint, but her narrative failed to include allegations of harassment, discrimination, or retaliation based on sex, and thus, Defendant contends she failed to put the EEOC on notice to investigate those allegations.[54] Defendant points out that the EEOC's Recommendation for Closure confirms that it did not investigate any claims related to sex discrimination, sexual harassment, or retaliation based on sex.[55] Defendant asserts these claims should be dismissed for failure to exhaust.[56]

---

[48] *Id.* at 8.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at 8–9.

[56] *Id.* at 9.

Alternately, Defendant argues Plaintiff's claims also fail on the merits.[57] Defendant avers Plaintiff's race-based hostile work environment claim fails.[58] Defendant contends Plaintiff cannot sustain a *prima facie* case for race discrimination.[59] While Plaintiff represents that Hughes, who is also Caucasian, harassed her, Defendant avers none of these comments were physically threatening, humiliating, severe, or related to race.[60] Defendant states that Plaintiff testified no one raised her race while employed for Defendant or in connection with her termination.[61] Defendant points out that Rodriguez, the sole decisionmaker, is the same race as Plaintiff.[62] While Plaintiff states she suffered from a hostile work environment in retaliation for reporting Hughes, Defendant contends the Fifth Circuit has never recognized a cause of action under Title VII for a retaliatory hostile work environment.[63]

While Plaintiff alleges Defendant harassed her by accusing her of racially harassing Perry and terminating her employment, Defendant contends Plaintiff's racial harassment of Perry led to her termination.[64] Defendant argues Plaintiff has no evidence other than speculation that race played a factor in her termination.[65] Defendant asserts the reasons underlying Plaintiff's termination do not rise to a level of a hostile work environment based on race.[66]

---

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.* at 10.

[61] *Id.* at 10–11.

[62] *Id.* at 11.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.*

Next, Defendant argues Plaintiff cannot sustain a sex-based hostile work environment claim under Title VII.[67] Defendant contends Plaintiff cannot establish the alleged conduct was sufficiently severe or pervasive to constitute actionable sex-based harassment.[68] Defendant provides that Plaintiff testified "Michael Hughes wanted to get rid of me because he did not like me because I told management he tried to stay at my apartment, that he harassed a trans person, that he didn't report an injury that happened on his shift."[69] Defendant further provides that Plaintiff claimed Hughes created a sex-based hostile work environment by giving more tables to male servers.[70] In regard to Hughes' request to stay at Plaintiff's apartment, Defendant argues this does not qualify as sexual harassment.[71] Defendant states that Hughes testified Plaintiff had offered him her spare room during Mardi Gras.[72] Defendant argues that Hughes is gay, and Plaintiff has not identified any requests for sexual favors or sexual activity in connection with the request.[73] Further, Defendant avers Plaintiff cannot show that Defendant failed to take prompt remedial action following Hughes' request to stay at Plaintiff's apartment.[74]

Defendant argues Plaintiff has no evidence that Hughes intentionally discriminated against her after she complained about Hughes calling a transgender employee the wrong pronoun.[75]

---

[67] *Id.* at 12.

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.* at 13.

[72] *Id.*

[73] *Id.*

[74] *Id.* at 14.

[75] *Id.*

While Plaintiff alleges the transgender employee was terminated as a result of Plaintiff's complaints about Hughes, Defendant argues Plaintiff has no evidence to support this allegation and Hughes did not have authority to terminate the transgender employee.[76] Defendant asserts Plaintiff has no support for her claim that Hughes intentionally discriminated against her after she complained about him.[77]

Defendant argues Hughes' alleged failure to report her on-the-job injury is not based on a protected characteristic.[78] Defendant contends Plaintiff fails to articulate how Hughes' purported failure to report her alleged injury constituted a sex-based hostile work environment.[79] Defendant avers complaints about the "ordinary tribulations of the workplace" are not actionable unless based on a protected trait.[80] Defendant argues Plaintiff's self-serving testimony cannot support her claim that Hughes gave more tables to male servers.[81] Defendant contends Plaintiff offers no evidence to support this allegation.[82]

Defendant argues Plaintiff cannot sustain a claim for race discrimination.[83] Defendant contends Plaintiff provided no evidence of direct discrimination.[84] Defendant provides that Plaintiff was replaced by another Caucasian woman after her termination, and Plaintiff cannot

---

[76] *Id.*

[77] *Id.* at 15.

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.* at 15–16.

[83] *Id.* at 16.

[84] *Id.* at 17.

prove she was treated less favorably than her comparators outside of her protected class under nearly identical circumstances.[85] Defendant contends Plaintiff was terminated for insubordination after she continued to gossip and complain about her manager to customers.[86] Defendant states Plaintiff's conduct was not nearly identical to her comparators for purposes of her race discrimination claim.[87]

Defendant argues Plaintiff cannot establish pretext for race discrimination.[88] Defendant contends that Plaintiff admitted to committing the actions, which Defendant states led to her termination.[89] Even if Plaintiff's allegations were true, Defendant avers Plaintiff offers no evidence that she was treated differently than other similarly situated employees under nearly identical circumstances.[90] Defendant explains employers are entitled to be unreasonable as long as they do not act with discriminatory animus.[91] Defendant avers the decisionmaker, Rodriguez, is the same race as Plaintiff.[92]

Defendant argues Plaintiff's claim for disability discrimination in violation of the ADA fails on the merits.[93] While Plaintiff's claim is based on a sleep disorder, Defendant contends Plaintiff testified that she can no longer work as a server due to mobility issues, which renders her

---

[85] *Id.*

[86] *Id.* at 18.

[87] *Id.*

[88] *Id.* at 19.

[89] *Id.*

[90] *Id.* at 20.

[91] *Id.*

[92] *Id.* at 21.

[93] *Id.*

unqualified under the ADA.[94] Defendant avers Plaintiff cannot show that Defendant failed to accommodate her, that her termination was related to her sleep disorder, nor can she establish pretext.[95] Defendant argues Plaintiff is not a qualified individual under the ADA because Plaintiff testified she can no longer work as a server.[96] Defendant explains Plaintiff's doctor's note stated she could not work mornings, and Plaintiff testified that she was scheduled for a single shift that began at noon while all other shifts began at 3:00–4:00 PM.[97] Defendant contends the aforementioned noon shift was scheduled by a newly hired manager with whom Plaintiff had never discussed her sleep disorder.[98] Defendant provides that when Plaintiff learned that she was scheduled for the noon shift, she emailed her manager stating that she would be "glad" to work that shift and she was a "team player".[99] Defendant avers there is no evidence that Plaintiff was denied a request for a reasonable accommodation, nor can she identify a comparator whom Defendant treated more favorably.[100] Defendant contends Plaintiff fails to rebut the legitimate, nondiscriminatory reason for her termination.[101]

Defendant argues Plaintiff cannot sustain a claim under the EPA because all servers were paid the same rate.[102] Defendant contends there is no pay difference to support an EPA violation

---

[94] *Id.*

[95] *Id.*

[96] *Id.* at 22.

[97] *Id.* at 23.

[98] *Id.*

[99] *Id.*

[100] *Id.* at 23–24.

[101] *Id.* at 24–25.

[102] *Id.* at 25.

because all servers were paid minimum wage under the Fair Labor Standards Act.[103] Defendant avers the EPA looks to equal wages for work, not equal gratuities.[104] Defendant explains tips are discretionary in nature, and there is no way to ascertain the amount of tips Plaintiff earned compared to her male coworkers.[105] Defendant asserts, considering the uncertain factors involved with tips, it is impossible to cast tips as "wages" for the purposes of an EPA claim.[106] Defendant avers Plaintiff cannot prove her burden of showing that Defendant willfully violated the EPA in order to apply the three-year limitation period.[107]

Defendant argues Plaintiff has no viable claim for retaliation.[108] Defendant contends the only instances that could qualify as protected activity to support a claim of retaliation under Title VII are when Plaintiff declined to allow Hughes to stay at her apartment and when she reported Hughes for using the wrong pronoun in reference to a transgender coworker.[109] Defendant avers Plaintiff has no competent summary judgment evidence to show these transgressions adversely impacted her employment.[110] Defendant asserts Plaintiff cannot overcome her own admitted misconduct which led to termination more than two months after Hughes asked to stay at her apartment and his misuse of pronouns.[111] Defendant maintains there is no evidence the sole

---

[103] *Id.* at 26.

[104] *Id.*

[105] *Id.* at 27.

[106] *Id.*

[107] *Id.*

[108] *Id.* at 28.

[109] *Id.*

[110] *Id.*

[111] *Id.*

decisionmaker, Rodriguez, terminated Plaintiff's employment because she complained about Hughes.[112] Defendant asserts Plaintiff's claims should be dismissed.[113]

**B.    *Plaintiff's Arguments in Opposition to the Motion for Summary Judgment***

In opposition, Plaintiff argues the evidence demonstrates genuine issues of material fact regarding Plaintiff's reverse race discrimination claims.[114] Plaintiff contends she was replaced by employees outside of her protected class, including African American coworkers such as Lena Perry.[115] Plaintiff contends she received fewer table assignments while other non-white employees were treated more favorably.[116] Plaintiff contends she was terminated without any progressive discipline or formal written warning, contrary to Defendant's practices.[117] Plaintiff avers other coworkers were not subjected to the same harsh penalties for similar or lesser conduct.[118] Plaintiff states that Hartman admitted Plaintiff's termination was largely based on Lena Perry's reaction not the content of the comment itself.[119] Plaintiff contends Rodriguez declared that any comment about Perry's hair was racial based on Perry being African American.[120] Plaintiff avers this blanket presumption of racial animus absent investigation or an opportunity to respond reflects unlawful stereotyping and differential treatment based on Plaintiff's race.[121]

---

[112] *Id.* at 28–29.

[113] *Id.* at 29.

[114] Rec. Doc. 79 at 6.

[115] *Id.* at 9.

[116] *Id.*

[117] *Id.*

[118] *Id.*

[119] *Id.*

[120] *Id.*

[121] *Id.*

Plaintiff argues any non-discriminatory reason for Plaintiff's discharge is pretextual.[122] Plaintiff contends she had a documented history of minimal interaction with Perry and Human Resources admitted its race-based interpretation was based solely on Perry's reaction.[123] While it was reported to the Louisiana Workforce Commission that Plaintiff was terminated for using racial slurs, Plaintiff states Hartman later admitted that this was a mistake, which Plaintiff contends undermines the credibility of Defendant's purported justification.[124] Plaintiff argues she can prevail under the mixed-motive theory because Plaintiff contends her race was a motivating factor in termination.[125] Plaintiff contends Rodriguez's presumption that any comment to an African American coworker was racial regardless of intent reveals race-based bias.[126]

Plaintiff contends Defendant's reason for termination is a pretext because the evidence shows Plaintiff merely complimented Perry's hair and expressed interest in wigs after Perry voluntarily disclosed that she wore one on March 21, 2022.[127] Plaintiff avers Defendant shifted its justification for Plaintiff's termination from racial slurs, to emotional impact, to insubordination, which Plaintiff argues demonstrates a lack of consistency and credibility.[128] Plaintiff provides that a jury could reasonably conclude Defendant exaggerated its concerns and the true reason for Plaintiff's termination was her race.[129]

---

[122] *Id.*

[123] *Id.* at 10.

[124] *Id.*

[125] *Id.*

[126] *Id.*

[127] *Id.*

[128] *Id.* at 11.

[129] *Id.*

Plaintiff argues Defendant's failure to investigate undermines the credibility of the decision to terminate her.[130] Plaintiff contends the incident involving Perry was not investigated, Hartman admitted she did not speak with Rodriguez about Plaintiff's disability accommodation letter, nor did Hartman verify whether Plaintiff's accommodations were being respected.[131]

While Perry's sworn declaration asserts that Plaintiff made daily offense comments about her hair and wigs, Plaintiff contends this is contradicted by the audio recording dated March 21, 2022, in which Perry disclosed for the first time that she wore a wig.[132] Plaintiff provides the next and final mention of Perry's hair occurred on March 29, 2022, prompting Perry's sudden reaction.[133] Plaintiff disputes claims that she made daily comments to Perry and states that she apologized to Perry.[134] Based on this, Plaintiff avers a jury may determine her termination was not based on any legitimate, nondiscriminatory reason.[135]

Regarding timeliness, Plaintiff argues the evidence demonstrates genuine issues of material fact regarding equitable tolling of the 90-day limitations period.[136] Plaintiff contends her counsel vigorously pursued her claims, but agency miscommunication and technical problems interfered with timely access to the Notice of the Right to Sue letter.[137] Plaintiff provides the EEOC transferred her charge to the Louisiana Commission on Human Rights ("LCHR") on April 10,

---

[130] *Id.* at 12.

[131] *Id.*

[132] *Id.* at 14.

[133] *Id.*

[134] *Id.*

[135] *Id.*

[136] *Id.* at 15.

[137] *Id.* at 16.

2023, and the EEOC issued a Right to Sue letter on December 7, 2023, while the LCHR continued to actively investigate the matter.[138] Plaintiff avers this overlap created the reasonable impression that the matter was still pending and that a decision had not been finalized.[139] Plaintiff argues that a September 28, 2023 email to the EEOC investigator, Kory Fascio, shows technical issues with accessing the portal.[140] Plaintiff contends the EEOC's notification was ambiguous, and Plaintiff's attorney continued to follow up with emails and phone calls, which were not returned.[141]

Plaintiff argues the evidence demonstrates disputes of material fact regarding Plaintiff's ADA claims.[142] Plaintiff contends her sleep disorder is a qualified disability under the ADA.[143] Plaintiff states she was scheduled for a 10-hour shift on March 16, 2022, which began at noon in disregard of Plaintiff's request for accommodation, and she was later fired on March 30, 2022.[144] Plaintiff asserts there is a question of fact in dispute as to whether the proximity between the shift and her termination establishes pretext.[145]

Plaintiff argues the evidence demonstrates genuine issues of material fact in dispute regarding her EPA claim.[146] Plaintiff claims she was given fewer tables and less customers to wait on in her position as a server, and thus, her income was significantly less than her peers.[147] While

---

[138] *Id.*

[139] *Id.*

[140] *Id.*

[141] *Id.* at 17.

[142] *Id.* at 18.

[143] *Id.* at 19.

[144] *Id.* at 20.

[145] *Id.*

[146] *Id.* at 21.

[147] *Id.* at 22.

Defendant argues Plaintiff was paid the same base hourly wage as her male comparators, Plaintiff contends this assertion fails to address that her earnings encompass the cash tips.[148] Plaintiff asserts the distribution of table assignments is directly linked to Plaintiff's claim that Defendant violated the EPA.[149] Plaintiff avers Defendant's contention that tips do not constitute wages is unsupported.[150]

Plaintiff states Defendant has not produced point-of-sale ("POS") or tip data for the relevant periods at issue which Plaintiff contends would provide evidence regarding section assignments, table turnover, and earnings.[151] Plaintiff argues the failure to preserve or produce this evidence warrants an adverse inference of discriminatory intent and unequal pay.[152]

**C.    Defendant's Arguments in Further Support of the Motion for Summary Judgment**

In reply, Defendant points out that Plaintiff failed to address several undisputed issues of material fact.[153] Defendant argues Plaintiff fails to establish grounds for equitable tolling.[154] While the Court previously denied Defendant's first motion for partial summary judgment, stating that additional discovery was needed on the steps Plaintiff and her counsel took the view the document and the alleged technical difficulties within the EEOC portal, Defendant contends Plaintiff conducted no discovery with the EEOC or the LCHR.[155] According to Defendant, Plaintiff and her

---

[148] *Id.* at 22–23.

[149] *Id.* at 23.

[150] *Id.* at 23–24.

[151] *Id.* at 24.

[152] *Id.*

[153] Rec. Doc. 83 at 1.

[154] *Id.* at 3.

[155] *Id.* at 3–4.

counsel stated they did nothing to access the document between December 7, 2023 and March 28, 2024.[156] Defendant contends Plaintiff admitted she requested a Notice of Right to Sue on December 7, 2023, and the EEOC issued the letter on the same date.[157] Defendant avers Plaintiff's assertion that she believed the investigation was ongoing is contradictory because the EEOC issues a Notice of the Right to Sue when the agency concludes the investigation.[158] Defendant asserts the Court must reject Plaintiff's contention that her counsel, a ten-year employment attorney, was confused after requesting a Notice of the Right to Sue.[159] Defendant argues Plaintiff has failed to provide evidence that the EEOC acted in a misleading manner or what steps Plaintiff or her counsel took to access the document uploaded on December 7, 2023.[160]

Defendant reiterates that Plaintiff cannot withstand summary judgment on Count 1 (race discrimination claim).[161] While Plaintiff states she was replaced by employees outside of her protected class, including Perry, Defendant contends Perry was an existing server and could not have replaced Plaintiff.[162] Defendant avers Plaintiff fails to identify any African American workers who purportedly replaced her.[163]

---

[156] *Id.* at 4.

[157] *Id.*

[158] *Id.*

[159] *Id.*

[160] *Id.* at 5.

[161] *Id.*

[162] *Id.*

[163] *Id.* at 6.

Defendant argues Plaintiff fails to identify a comparator outside of her protected class who was treated more favorably.[164] While Plaintiff asserts other severs received preferable tables and shifts, Defendant contends Plaintiff fails to identify a comparator who received more favorable tables and shift assignments.[165]

While Plaintiff states she was terminated without progressive discipline or formal warning, Defendant avers none of Plaintiff's cited testimony supports this contention.[166] Defendant explains employers are not required to follow progressive discipline or issue written warning prior to terminating an at-will employee.[167] Defendant contends Plaintiff fails to show any bad faith of Rodriguez, the sole decisionmaker, who is the same race as Plaintiff.[168] Defendant asserts Plaintiff provides no evidence to support her allegations that she was replaced by someone outside of her protected class or that she was subjected to disparate treatment based on her race.[169]

Defendant argues Plaintiff fails to show that Defendant's legitimate, nondiscriminatory reasons for Plaintiff's termination were pretext for race discrimination.[170] While Plaintiff contends Defendant failed to investigate Perry's complaints regarding racial remarks made by Plaintiff, Defendant explains Hughes reported the incident to Hartman, who instructed him to write a statement of the incident and Plaintiff's other transgressions.[171] Defendant states Hartman gave

---

[164] Id.

[165] Id.

[166] Id. at 7.

[167] Id.

[168] Id. at 8.

[169] Id.

[170] Id.

[171] Id. at 8–9.

the statement to Rodriguez, who spoke to Perry and another employee, which ultimately led to Plaintiff's termination.[172]

Defendant argues Plaintiff only offers self-serving testimony to support her contentions.[173] Defendant contends Plaintiff simply disagrees that she should have been fired, but Plaintiff fails to produce evidence to contradict the legitimate reasons offered for her termination.[174] Defendant acknowledges a mistake was make when "racial slurs" were provided as the reason for Plaintiff's termination, but Defendant contends this mistake does not mean pretext.[175] Defendant avers Plaintiff fails to address the other reasons for her termination such as gossiping and speaking negatively about her manager to customers.[176]

Defendant reiterates Plaintiff fails to establish that but for her race, she would not have been terminated.[177] Defendant contends no reasonable jury could find that Rodriguez, who is Caucasian, terminated Plaintiff, who is also Caucasian, based on her race.[178]

Defendant argues Plaintiff fails to show that she was a qualified individual after she worked at Landry's.[179] Defendant explains it does not dispute that Plaintiff's sleep disorder is a disability, but Defendant does dispute whether Plaintiff is a qualified individual due to her mobility issues

---

[172] *Id.* at 9.

[173] *Id.*

[174] *Id.*

[175] *Id.* at 10.

[176] *Id.* at 11.

[177] *Id.*

[178] *Id.*

[179] *Id.* at 12.

and whether Plaintiff can recover back pay and front pay.[180] Defendant contends there is no genuine issue of material fact in dispute, because Defendant accommodated Plaintiff's disability and the restrictions in her doctor's note.[181] Defendant avers Plaintiff's doctor's note did not restrict shifts that began in the afternoon.[182]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[183] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[184] All reasonable inferences are drawn in favor of the nonmoving party.[185] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[186] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a

---

[180] *Id.*

[181] *Id.*

[182] *Id.*

[183] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[184] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[185] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[186] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

matter of law.[187] The nonmoving party may not rest upon the pleadings.[188] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[189]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[190] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[191] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[192] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[193]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations,

---

[187] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.*, 391 U.S. 253, 289 (1968)).

[188] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[189] *See id.*; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[190] *Celotex Corp.*, 477 U.S. at 323.

[191] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

[192] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[193] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

by unsubstantiated assertions, or by only a scintilla of evidence."[194] Moreover, the nonmoving

party may not rest upon mere allegations or denials in its pleadings.[195]

## VI. Analysis

Defendant seeks summary judgment arguing that: (1) Plaintiff's Title VII and the ADA

claims are untimely because the complaint was filed more than 90 days after receipt of Notice of

the Right to Sue; (2) Plaintiff failed to exhaust her administrative remedies with respect to her Title

VII claims for sex discrimination, harassment, and retaliation; and (3) Plaintiff cannot maintain

claims for race discrimination, hostile work environment, retaliation, violations of the EPA,

violations of the ADA, or sex discrimination. In opposition, Plaintiff argues the doctrine of

equitable tolling applies here, and thus her claims were timely. Plaintiff also argues that genuine

issues of material fact remain in dispute regarding the underlying discrimination claims. The Court

will first address the issues raised regarding timeliness.

### A.    Timeliness

Under both Title VII and the ADA, a plaintiff must file suit within 90 days of receiving the

Notice of Right to Sue from the EEOC.[196] "[C]ommencement of the ninety-day period begins to

run on the day that notice is received at the address supplied to the EEOC by the claimant."[197] The

Fifth Circuit has recognized that "when the date that the letter is actually received is unknown or

---

[194] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[195] *Morris*, 144 F.3d at 380.

[196] *See* 42 U.S.C. § 2000e-5(f)(1) (Title VII); 42 U.S.C. § 12117(a) (applying Title VII's limitations period to ADA claims).

[197] *Bowers v. Potter*, 113 F. App'x 610, 612 (5th Cir. 2004).

is in dispute, we will, like other courts, presume that the letter was received within three to seven days after it was mailed[.]"[198]

The deadline for filing is not a jurisdictional requirement, and the limitation statute is subject to estoppel and equitable tolling.[199] "A defendant is equitably estopped from asserting that a claim is time-barred where its conduct induced a plaintiff to refrain from exercising its rights. 'Equitable tolling focuses on the plaintiff's excusable ignorance of the employer's discriminatory act.'"[200] However, these equitable doctrines "are to be applied sparingly."[201] The plaintiff bears the burden of demonstrating entitlement to tolling or estoppel.[202]

The Fifth Circuit has articulated three potential bases for equitable tolling in employment discrimination cases: "(1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights."[203] However, this list is not exhaustive, and the Fifth Circuit has opined that there may be other bases that warrant equitable tolling.[204]

It is undisputed that Plaintiff's attorney requested a Notice of the Right to Sue from the EEOC on December 7, 2023, the EEOC issued the Notice of the Right to Sue on the same day,

---

[198] *Id.* at 612–13.

[199] *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992) (citing *Zipes v. TransWorld Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

[200] *Id.* (quoting *Amburgey v. Cohart Refractories Corp.*, 936 F.2d 805, 810 n. 14 (5th Cir. 1991)).

[201] *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

[202] *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002) (internal citations omitted).

[203] *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 380 (5th Cir. 2019) (quoting *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002). *See also Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003) (citing *Blumberg v. HCA Mgmt. Co*., 848 F.2d 642, 644 (5th Cir. 1988)).

[204] *Melgar.*, 931 F.3d at 381 (citing *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999)).

and Plaintiff filed suit in this Court on March 29, 2024, 113 days later. Plaintiff contends agency miscommunication and technical problems interfered with timely access to the Right to Sue letter. Plaintiff's counsel also states he was under the impression that the matter was still pending and that a decision had not been finalized because the EEOC and LCHR were operating jointly. The Court is not persuaded by Plaintiff's assertions. Plaintiff has failed to show (1) the pendency of a suit between the same parties in the wrong forum; (2) that she was unaware of facts giving rise to this claim because of Defendant's intentional concealment; or (3) that the EEOC misled her about the nature of her rights.[205] Further, courts are reluctant to apply equitable tolling to situations of attorney error or neglect, or where a plaintiff has failed to show that she pursued her rights diligently.[206] Plaintiff bears the burden of demonstrating the basis for tolling the limitations period.[207]

The Court gave Plaintiff additional time to conduct discovery on alleged technical difficulties with accessing the EEOC portal.[208] Despite this opportunity, Plaintiff has failed to present any additional evidence that would support her argument for equitable tolling. The evidence presented is insufficient to meet Plaintiff's burden, and Plaintiff has not demonstrated that equitable tolling applies. As such, Plaintiff's claims under Title VII for hostile work environment, reverse racial discrimination, retaliation, and disability discrimination under the ADA must be dismissed as untimely.

---

[205] *See Granger v. Aaron's, Inc.,* 636 F.3d 708, 712 (5th Cir. 2011); *see also Hood v. Sears Roebuck & Co.,* 168 F.3d 231, 233–34 (5th Cir. 1999).

[206] *See Granger,* 636 F.3d at 712 (citing *Wilson v. Sec'y Dep't of Veterans Affairs,* 65 F.3d 402, 404–05 (5th Cir.1995)).

[207] *Ramirez v. City of San Antonio,* 312 F.3d 178, 184 (5th Cir.2002).

[208] Rec. Doc. 17.

26

**B.**     ***The Equal Pay Act***

The Court now turns to Plaintiff's remaining claim under the Equal Pay Act. Plaintiff alleges she was not paid equally to her male coworkers because she was given fewer tables and less customers to wait on in her position as a server. "In short, [the Equal Pay Act] demands that equal wages reward equal work."[209] "Unlike Title VII, the burden of persuasion may shift from the plaintiff to the defendant in a suit under the Equal Pay Act."[210] The plaintiff bears the initial burden of making out a prima facie case of discrimination under the Equal Pay Act by "showing that an employer compensates employees differently for equal work."[211] To make out a prima facie case under the Equal Pay Act, a plaintiff must show: (1) "her employer is subject to the Act;" (2) "she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions;" and (3) "she was paid less than the employee of the opposite sex providing the basis of comparison."[212] If the plaintiff makes out a *prima facie* case, the burden of proof "shifts to the employer to show that the differential is justified under one of the Act's four exceptions." The four enumerated exceptions to the Equal Pay Act "are affirmative defenses on which the employer has the burden both of production and of persuasion."[213]

It is undisputed that Plaintiff and her male coworkers were all employed as servers and compensated according to the same pay structure—a uniform hourly base wage supplemented by tips received from customers. Plaintiff has not introduced evidence that Defendant's male

---

[209] *Siler–Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio,* 261 F.3d 542, 546 (5th Cir. 2001) (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)).

[210] *Jones v. Flagship Intl.,* 793 F.2d 714 (5th Cir. 1986).

[211] *King v. Univ. Healthcare Sys., L.C.,* 645 F.3d 713, 723 (5th Cir. 2011) (citing *Siler–Khodr,* 261 F.3d at 546).

[212] *Chance v. Rice Univ.,* 984 F.2d 151, 153 (5th Cir. 1993).

[213] *Jones,* 793 F.2d at 722 (quoting *Corning Glass Works,* 417 U.S. at 197, 94 S.Ct. at 2223).

employees received a higher hourly wage, or that Defendant engaged in any discriminatory practices in setting pay rates. Plaintiff contends Defendant has not produced POS data or tip data for the relevant period, which would have provided evidence regarding section assignments, table turnover, and earnings. However, said evidence would be inconsequential.

"Under the EPA, the term 'wages' generally includes all payments made to [or on behalf of] an employee as remuneration for employment. The term includes all forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name."[214] "A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for the customer. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer."[215] Plaintiff has not alleged that tips were pooled by the employer and later unequally distributed to employees based on sex or race.[216] The plain language of the above-referenced statutes reflects an intention to separate tips and wages. Even assuming the POS data would show a differentiation in tip amounts, as stated above "[w]hether a tip is to be given, and its amount, are matters determined solely by the customer."[217] Further, differentiations in table assignments is not determinative of tips received because one server may receive a large tip from one table, while another server may receive much less from several tables. The Court, drawing

---

[214] 29 C.F.R. § 1620.10.

[215] 29 C.F.R. § 531.52.

[216] See e.g., Morgan v. SpeakEasy, LLC, 625 F. Supp. 2d 632 (N.D. Ill. 2007).

[217] 29 C.F.R. § 531.52.

reasonable inferences in favor of Plaintiff, concludes that the entire record could not lead a rational trier of fact to find for Plaintiff. As such, Plaintiff has failed to establish a *prima facie* case under the Equal Pay Act, and summary judgment is appropriate.

## C.    *Motion for Sanctions*

Plaintiff filed a Motion for Sanctions, arguing sanctions should be imposed against Defendant for failing to preserve the above-referenced POS data. A federal court has the inherent power to sanction a party who has abused the judicial process.[218] The spoliation of evidence is one such abuse.[219] Spoliation is the "destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[220] Destroying or altering evidence, however, does not necessarily mean that the party has engaged in sanction-worthy spoliation. Instead, the Court must first find the existence of a duty to preserve the information, a culpable breach of that duty, and resulting prejudice to the innocent party.[221] The party seeking the spoliation sanction bears the burden of proof.[222] In order to satisfy the prejudice requirement, the party seeking sanctions must demonstrate that the missing or altered evidence would have been relevant to her case.[223] "[L]ost or destroyed evidence is 'relevant' if a 'reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.'"[224] For the reasons stated herein, production of the POS data

---

[218] *Chambers v. NASCO,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

[219] *Rimkus Consulting Group, Inc. v. Cammarata,* 688 F.Supp.2d 598, 611 (S.D.Tex.2010).

[220] *Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 590 (4th Cir.2001) (citing *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999)); Black's Law Dictionary 1531 (9th ed. 2009).

[221] *Rimkus,* 688 F.Supp.2d at 612, 615–16; *Victor Stanley v. Creative Pipe, Inc.,* 269 F.R.D. 497, 520–21 (D.Md.2010).

[222] *Rimkus,* 688 F.Supp.2d at 615–16.

[223] *Rimkus,* 688 F.Supp.2d at 616.

[224] *Victor Stanley v. Creative Pipe, Inc.,* 269 F.R.D. 497, 531 (D.Md.2010)(quoting *Thompson v. U.S. Dep't of Housing & Urban Dev.,* 219 F.R.D. 93, 101 (D.Md.2003)).

would not have supported Plaintiff's EPA claim. As such, the Court denies the Motion for Sanctions.

## V. Conclusion

For the reasons stated herein, the Court finds that Plaintiff's claims under Title VII and the ADA are untimely and must be dismissed. The Court further finds that Plaintiff has failed to establish a *prima facie* case under the Equal Pay Act, and thus, summary judgment is appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment[225] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions[226] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this _____ 22nd day of July, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[225] Rec. Doc. 66.

[226] Rec. Doc. 67. The Court also denies Defendant's request for attorney's fees.